# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA,
           Plaintiff,                                        CASE NO.: 6:13-CV-1609-Orl-31DAB

v.

JEROME HENNIGAN,
           Defendant.
_____/

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant, Jerome Hennigan, hereby files his answer and affirmative defenses.

**1.**      As to paragraph 1 of the complaint the defendant denies this court

has subject matter jurisdiction. The defendant asserts that all or a portion of the alleged debts

identified in the complaint's two causes of action (Claim Numbers 2010A24090 and

2010A24103) were previously adjudicated in Florida's circuit and county state courts.

Specifically, in *HEMAR Insurance Corporation of America v. Jerome Hennigan,* Orange County

Count Court Case No.: 1991-CC-8458, judgment was entered in the county court on February 3,

1993 in favor of HEMAR for the amount of $9,389.84. Additionally, in *HEMAR Insurance*

*Corporation of America v. Jerome Hennigan*, Orange County Circuit Court Case No.: CI1991-

9166, judgment was entered in the circuit court on February 19, 1993 in favor of HEMAR for the

amount of $14,541.45.

Based upon currently available information and belief these 20 year old plus Florida state

court judgments were obtained by HEMAR against the defendant and directly involve and relate

to either one or both of the complaint's two causes of action. In the complaint the plaintiff claims

it was assigned the defendant's loans. An assignee of a note takes the note subject to the rights

and obligations of the assignor as well as of the legal status and viability of the note. HEMAR pursued its remedies in Florida's state courts and obtained judgments on either all or some of the promissory notes it later assigned to the plaintiff. It is these notes that are now the focus of the instant federal court lawsuit.

HEMAR's assignment of the notes to any other third party or subsequent holder including the Government essentially means that HEMAR assigned its rights to collect on the 1993 Florida state court judgments. The failure by HEMAR or any other subsequent holder or assignee of the notes to do so within the twenty year period required by Fla. Stat. 55.081 means that the plaintiff as the claimed current assignee of the notes therefore only took from HEMAR the right to enforce the previously entered 1993 state court judgments within twenty years pursuant to Fla. Stat. 55.081.An assignee of a note only takes the rights of the original lender. Neither HEMAR or any subsequent owner, holder or assignee of the notes (including the plaintiff) ever enforced the 1993 state court judgments.

This court lacks subject matter jurisdiction to adjudicate the amounts now claimed owing since HEMAR previously obtained state court judgments on the same monies  the plaintiff is now seeking separate judgments on in federal court. The assignment of the notes and judgments to the plaintiff only gave the plaintiff the state court judgments and since nothing was done to enforce those judgments within the twenty years required by Fla. Stat. 55.081 this court does not have subject matter jurisdiction. A lender or its assignee cannot invoke the jurisdiction of a federal court in a civil matter in which a state court was previously requested to and subsequently entered judgment on. Since HEMAR decided to and pursued its remedies against the defendant in Florida's state courts and assigned its judgment holder rights to the plaintiff this court cannot

2

now exercise jurisdiction in the same matter.

    **2.**      Denied as to Seminole County, Florida residency. Admitted only to the extent that the defendant' Orange County residence is within the geographical venue of this court's jurisdiction.

    **3.**      First Cause of Action - Claim Number 2010A24090

Defendant denies paragraph 3. Defendant adopts and realleges as if fully set forth herein the information contained within paragraph 1 of this answer and which details the circumstances and state court judgment amounts obtained against the defendant and which, based upon information and belief, involve the very same loans the plaintiff is now seeking federal judgments on. As to the Certificate of Indebtedness (Exhibit A) the defendant denies the claimed total amount owed and is without knowledge and therefore denies all other allegations contained within the Certificate.

    **4,**      Second Cause of Action - Claim Number 2010A24103

Defendant denies paragraph 4. Defendant adopts and realleges as if fully set forth herein the information contained within paragraph 1 of this answer and which details the circumstances and state court judgment amounts obtained against the defendant and which, based upon information and belief, involve the very same loans the plaintiff is now seeking federal judgments on. As to the Certificate of Indebtedness (Exhibit B) the defendant denies the claimed total amount owed and is without knowledge and therefore denies all other allegations contained within the Certificate.

    **5.**      Denied.

**Affirmative Defenses**

3

### First Affirmative Defense.- Lack of Subject Matter Jurisdiction

6.        Defendant adopts and realleges as if fully set forth herein paragraph 1 of his

answer to the complaint. Said paragraph 1 details why this federal court does not have subject

matter jurisdiction as a result of HEMAR's actions in electing to sue and obtain state court

judgments on the same debt the plaintiff as a subsequent assignee is now seeking to obtain in

federal court.

### Second Affirmative Defense - Accord and Satisfaction Or Extinguishment

7.        Defendant realleges and adopts as if fully set forth herein paragraph 1 of his

answer to the complaint. Fla. Stat. 55.081 requires a judgment holder to enforce its judgment

within 20 years or the judgment is extinguished. The plaintiff as the assignee of HEMAR's state

court judgments stood in its shoes and was required to enforce its judgment rights under Florida

law.  The failure of HEMAR and of all subsequent owners, holders, guarantors, assignees or

guaranty agencies to comply with Fla. Stat. 55.081 therefore means that the debts claimed under

the state court judgments are deemed extinguished and therefore satisfied.

### Third Affirmative Defense -Assumption of Risk As To HEMAR's Assignment of Judgments

8.        The plaintiff accepted  HEMAR's assignments of the state court

judgments obtained on the notes. The plaintiff failed to investigate, confirm or otherwise

determine or verify that HEMAR had previously elected to sue and obtain state court judgments

thereby subjecting itself and all subsequent owners, holders, guarantors or assignees to Fla. Stat.

55.081. By accepting HEMAR's assignment despite failing to ensure that HEMAR had timely

pursued its judgments, the plaintiff assumed the risk that the judgments were no longer

enforceable in any state or federal court.

4

## Fourth Affirmative Defense - Set-Off And Offset

9.       For the reason detailed in paragraphs 1, 7 and 8 the defendant is entitled to a set-off and offset of $23, 931.20 plus accrued interest since 1993 on the total amount of $121,481.88 the USA is now claiming is owed.

## Fifth Affirmative Defense - Res Judicata

10.       For the reasons detailed in paragraphs 1, 7, and 8 the USA as assignee of HEMAR's notes is bound to the State of Florida's judicial judgments entered in 1993. The state court judgments mean that the amounts and issues in controversy surrounding the HEMAR notes were previously fully adjudicated by a court of competent jurisdiction and the USA cannot now seek a federal court's review of nor invoke its jurisdiction in the same controversy.

## Sixth Affirmative Defense - Collateral Estoppel

11.       For the reasons detailed in paragraphs 1, 7, and 8 the plaintiff, as the assignee of HEMAR's state court judgments, is collaterally estopped from claiming in the instant federal lawsuit that payments have not been made and that it is entitled to outstanding principal,  interest charges and administrative costs as a result of alleged default and non-payment. In 1993 Florida's state courts adjudicated these same factual issues and entered final judgments in HEMAR's favor. The plaintiff is collaterally estopped from now seeking a federal court's review of these previously adjudicated facts in an attempt to obtain a federal court judgment on the same debts previously converted to State of Florida judgments.

## Seventh Affirmative Defense - Release

12.       For the reasons detailed in paragraphs 1, 7 and 8 the plaintiff took HEMAR's assignment subject to the benefits and legal obligations imposed on a Florida state court

judgment holder. The failure of previous owners, holders or guarantors of the judgments to do

anything means that the defendant is released from the judgments and the plaintiff's current

attempts to collect on the same amounts some 21 years later.

### Eighth Affirmative Defense - Violation Of Fla. Stat. 55.081

13.     As previously detailed above, neither HEMAR or any owners, holders, guarantors

or guaranty agencies who held or owned the notes and judgments did anything to secure or

advance their interests in the 1993 judgments as required by the time periods specified by Fla.

Stat.55.081. This was not done and the state court judgments are therefore extinguished.

### Ninth Affirmative Defense - Violations of 20 U.S.C. § 1080 - Failure of Lenders To Provide Initial Disclosure Statements. (Initial Disclosure Statements)

14.     Defendant was a borrower as defined by 34 C.F.R. 602.200(b). As to the

plaintiff's first and second claims, Dade Savings & Loan Association and the Student Loan

Marketing Association as well as the currently unknown lenders whose earlier loans were

consolidated by the Student Loan Marketing Association were  "lenders,"or "eligible lenders" as

defined by 24 C.F.R. 601(2) and 34 C.F.R. 602.200(b) and section 435(d) of the Higher

Education Act of 1965 respectively.. They will be hereinafter be collectively referred to as the

"Lenders". The State of Florida Department of Education Office of Student Financial Assistance

and Higher Education Assistance Foundation (HEAF) were "guaranty agencies" as defined by 34

C.F.R. 602.200(b).and will be referred to collectively as such.  The Department of Education

(hereinafter the "Department") reinsured the loans under a yet-to-be determined reinsurance

policy under unspecified loan guaranty programs. HEMAR as well as any other loan servicer(s)

of the loans must comply with 20 U.S.C. Code § 1080 and 20 U.S.C. 1082 as well as the due

diligence requirement imposed on lenders and loan servicers pursuant to 34 C.F.R. Part 682. The

unknown previous holders of the notes subsequently claimed the defendant defaulted and filed

claims with the State of Florida Department of Education and HEAF as the guaranty agencies

and were subsequently paid.. These guaranty agencies were subsequently reimbursed by the

Department. under unspecified loan reinsurance agreements.

15.    As to the USA's first and second claims, the Lenders violated 20

U.S.C. §1082(d) by failing to exercise reasonable care and diligence in the making of the loans.

Specifically the Lenders  failed to provide defendant with the Initial Disclosure Statements

required by 34 C.F.R. 682.205 and 34 C.F.R. 601.40(a) which require among other things:

> A) a bold-faced statement that the loans must be repaid; *See* 34 C.F.R.
>
> 682.205(a)(1)
>
> B) the lender's name and toll-free number; address where payments and
>
> correspondence are to be sent; notice that the loans may be sold or transferred and
>
> that the address to which payments and correspondence may as a result change;
>
> the principal amount of the loan; amounts and types of charges collected by the
>
> lender at the loan(s)' disbursements and who pays those charges; the actual
>
> interest rate; annual and aggregate maximum loan amounts that can be borrowed;
>
> the loans would be reported to consumer reporting agencies; an explanation of
>
> when the loan and interest must be repaid and the maximum and minimum years
>
> under which the loan and its payments must be repaid and payments received;
>
> consolidation and deferment options; and the statutory definition of "default" as
>
> found in 34 C.F.R. 682.200 along with the consequences of default including

7

garnishment and withholding of income tax refunds. *See* 34 C.F.R.

682.205(a)(2)(i)-(xxiv).

16.     The failure to comply with the initial disclosure requirements caused the

defendant to be unaware of all of the respective rights and obligations both the defendant and the

lender incurred in the making of the loans including but not limited to his rights to forbearance,

deferment, refinancing and consolidation as well as negative ramifications for non-payment such

as withholding of tax returns and garnishment. The non-disclosure of these rights allowed the

lenders to unlawfully declaring the loans to be in default. This, in turn, resulted in them receiving

from both the defendant and USA improper and unlawful payments/reimbursement on loans that

were not properly entered into pursuant to federal law.

**Tenth Affirmative Defense - Violations of 20 U.S.C. § 1080**
**Failure of Lenders To Provide Separate Written Statements At Time Of First**
**Disbursements Detailing The Borrower's Rights And Responsibilities.**
**(Statement of Borrower's Rights)**

17.     Defendant adopts and re-alleges as if fully set forth herein the definitions and

chronology of events set forth in paragraph 14. The Lenders violated 20 U.S.C. §1082(d) by

failing to exercise reasonable care and diligence in the making of the loans by failing to provide

the defendant near or prior to the loans' first disbursements with a separate written statement(s)

detailing the defendant's rights and responsibilities pursuant to the loans. Specifically the

Lenders failed to provide defendant with a written statement(s) detailing the borrower's rights

and responsibilities pursuant to the loans. This written statement(s) hereinafter referred to as the

"Statement Of Borrower's Rights" must be provided to the borrower pursuant to 34 C.F.R.

205(b) and is considered a mandatory disclosures separate from the Initial Disclosure Statement

8

required by 34 C.F.R. 205(a). Among other things the Statement of Borrower Rights must be a

separate written statement from the Initial Disclosure Statement that summarizes the borrower's

rights and responsibilities and warns the borrower of the consequences of default (as set forth in

34 C.F.R. 682.205(a)(2)(xvi)) and that any default will be reported to all credit reporting

agencies.

18.    The failure to provide the Statement of Borrower Rights caused the

defendant to be unaware of all of rights to possible forbearance, deferment, refinancing and

consolidation as well as the of consequences of default.. The  non-disclosure of these rights

allowed the lenders to unlawfully declaring the loans to be in default. This, in turn, resulted in

them receiving from both the defendant and USA improper and unlawful

payments/reimbursement on loans that were not properly entered into pursuant to federal law.

**Eleventh Affirmative Defense - Violations of 20 U.S.C. § 1080**
**Failure of Lenders To Provide Separate Disclosure Statements**
**At Or Prior To The Beginning Of The Repayment Period.**
**(Repayment Disclosure Statement)**

19.    Defendant adopts and re-alleges as if fully set forth herein the definitions and

chronology of events set forth in paragraph 14. The Lenders violated 20 U.S.C. §1082(d) by

failing to exercise reasonable care and diligence in the making of the loans by failing to timely

provide the defendant at or prior to the beginning of each of the respective loans' repayment

periods with the statement(s) required by 34 C.F.R. 682.205( c) . This statement hereinafter

referred to as the "Repayment Disclosure Statement" requires, among other things, written

notification of the lender's name, address and toll-free telephone number; scheduled date

repayment is to be begin; estimated loan balance and capitalized interest owed; actual interest

rate, fee explanation, borrower's repayment schedule including amount and number of payments

to be made; description of all repayment plans; explanation of special loan repayment benefits;as

well as options to cure a default. *See* 34 C.F.R. 682.205(c),

20.     As it applies to the failure to provide a Repayment Disclosure

Statement the defendant adopts and re-alleges as if fully set forth the statements set forth in

paragraph 18.

**Twelfth  Affirmative Defense - Violations of 20 U.S.C. § 1080 and §1082**
**Failure of Lenders And Loan Servicers And Loan Holders To Provide Required Notices Of**
**Loan Information During Repayment. Failure To Provide Required Disclosures For**
**Borrowers Having Difficulty Making Payments Or In Delinquent Status Including**
**Notification of Available Income-Sensitive and Income-Based Repayment Options.**

21.      Defendant adopts and re-alleges as if fully set forth herein the definitions and

chronology of events set forth in paragraph 14. The Lenders and/or their Loan Servicers and/or

Loan Holders violated 20 U.S.C. §1080(d) by failing to exercise reasonable care and diligence in

the making and collection of the loans. During repayment they did not provide the defendant with

regular consistent bills or statements reflecting the loan's respective principal amount, current

balance or interest as required by 34 C.F.R. 682.205(c)(3).

22.     Moreover, after the defendant informed them of his difficulty in making payments

and became more than 60 days delinquent they did not notify or provide information about

alternative repayment plans, forbearance and possible options to avoid default and/or discharge

the loans as required by 34 C.F.R. 682.205(c)(4) and 682.205(c)(5).

23.     After the defendant notified them of his difficulty in making the

required loan payments,  none of the Lenders, Loan Servicers and Loan Holders provide any

information about the availability of income-sensitive and income-based repayment options as required by 34 C.F.R. 682.205(h) and 682.205(i).

24.     The defendant with not provided with consistent regular bills or loan statements nor with information as to how his financial difficulties in making the loan payments could be addressed by a different repayment plan(s). The  non-disclosure of these required disclosure allowed the Lenders and/or Loan Services and/or Loan Holders to unlawfully declaring the loans to be in default. This, in turn, resulted in them receiving from both the defendant and USA improper and unlawful payments/reimbursement on loans that were not properly entered into pursuant to federal law.

**Thirteenth Affirmative Defense**
**Violations of 15 U.S.C. §1638**
**(Truth In Lending Act [TILA])**

25.     Defendant adopts and re-alleges as if fully set forth herein the definitions and chronology of events set forth in paragraph 14. The original promissory notes alleged to create the claimed amounts due have not been filed with the court and the defendant does not have copies of them. Assuming, *arguendo*, that the notes do exist, the USA is claiming that they were issued by Dade Savings and Loan Association and the Student Loan Marketing Association. The Student Loan Marketing Loan Association note was made as a result of the consolidation of other earlier notes from an unknown lender(s) and in unknown amount(s). To the extent that any of these notes and loans are determined to be "private education loans" as defined by 15 U.S.C. §1638 (Truth-In-Lending Act) or the Higher Education Act of 1965, as amended, 20 U.S.C. 1001 et seq., and 34 C.F.R. 601.12(b), the Lenders for any such loan(s) did not comply with the specific TILA notices and disclosures. TILA disclosures required under 15 U.S.C. §1638(e) must

11

also be disclosed for any private education loan under the Higher Education Act of 1965, as amended, pursuant to 34 C.F.R. 601.401(2).

26.     The defendant's borrowing of any such private education loan as well as the lender's actions in providing such funds was a consumer credit transaction under TILA. 15 U.S.C. §1638(e) of TILA requires a creditor in any private education loan to disclose in its loan application form in a clear and conspicuous manner detailed information about the loan. These disclosures, among other things, must include the rate of interest; if such interest is variable; limitations on interest rate adjustments; finance charges; late fees, penalties and adjustments to principal based on defaults or late payments; deferral options, total cost of the loan over its repayment period and the requirement that the borrower must sign a form acknowledging he has been provided written disclosure of these TILA rights. 15 U.S.C. §1638(e)(1)(A)- (R) . TILA also require a private education loan lender to disclose at the time the loan has been approved and again at the time of the loan's consummation what the principal and interest will be, its applicable finance charges, late fees, penalties and adjustments as well as total repayment costs and payment deferral options, if any. 15 U.S.C. §1638(e)(2) and (e)(4). Any such private education loan provided to the defendant by a lender and under which the plaintiff is suing for does not comply with TILA and should be deemed unenforceable.

### Fourteenth Affirmative Defense
### Violation of 20 U.S.C. §1080(a) and (d)
### Failure Of The Lenders And/Or Its Services To Exercise Due Diligence In The Servicing Of The Defendant's Loans

27..    Defendant adopts and re-alleges as if fully set forth herein the definitions and chronology of events set forth in paragraph 14. As to the plaintiff's  first and second claims, the

Lenders violated 20 U.S.C. §1080(a) and (d) by failing to exercise reasonable care and diligence in the collection of the loans. The Lenders and/or its Loan Servicers, including but not limited to Dade Savings, the State of Florida Department of Education Office of Student Financial Assistance, HEMAR, HEAF, the unknown lenders whose loans constitute the consolidated loan made by the Student Loan Marketing Association and the Student Loan Marketing Association did not exercise due diligence in the servicing of the defendant's loans. Due diligence in servicing an educational loan includes but is not limited to reporting to national credit bureaus, timely responding to borrower inquiries, establishing the terms of repayment and reporting a borrower's enrollment and loan status information, 20 U.S.C. §1080(a) and (d).

28.     The Lenders and/or their Loan Servicers failed to individually report within 90 days of the first disbursements the amount, balance and repayment status of their respective loans to at least one national credit bureau. They failed to report every 90 days or quarterly any change in the defendant's repayment status from current to delinquent. 34 C.F.R. 208(b). They failed to respond within thirty days to the defendant's inquiries about the status of his loans and possible ways to avoid delinquency and default. 34 C.F.R. 208 ( c).   They failed to discuss or explore the revision of the defendant's repayment schedule based on his economic difficulties in clear avoidance of the authority they were granted to do so by the Department pursuant to 34 C.F.R. 208(d).

29.     All of the Lenders and/or their Loan Servicers failed to exercise due diligence by failing to notify both the defendant and the guaranty agency that guaranteed its loan that its loan had been assigned or its ownership transferred. These notifications must be made within 45 days of the assignment or ownership transfer of its loans and must notify both the defendant and

13

guaranty agency of the specific identity of the assignee, date of assignment or tranfer and new

contact information. 34 C.F.R. 682.208 (e)(1)-(5).

     **30.**    In the alternative, if all or some of the loans were not assigned but instead became

held by a third party they also failed to notify the defendant of the note holder's specific identity

and contact information as required by 34 C.F.R. 682.208(h).

     **31.**    The Lenders and/or their Loan Servicers also failed to exercise due diligence by

failing to timely collect the defendant's loans. They did not notify the defendant of his initial

delinquency within 10 days and did not contact the defendant during the six and eight month

period following the delinquency. 34 C.F.R. 682.507(b). Moreover, they did not utilize skip-

tracing assistance in attempting to locate and contact the defendant. 34 C.F.R. 682.507 (c ).

     **32.**    Due diligence was also not exercised in that the Lenders and/or their Loan

Servicers did not request mandatory preclaims assistance from the Department as required by 34

C.F.R. 682.507(d).

     **32.**    Due diligence was not also not exercised in that the Lender and/or their Loan

Servicers did not provide the defendant with a final demand letter at least thirty days before they

filed a claim with the responsible guaranty agency or guarantor. Said final demand letter was a

condition precedent to declaring the defendant in default and making a claim on the loan. 34

C.F.R. 507(e).

     **34.**    But for these identified due diligence failures the defendant would not have been

delinquent and would have been able to either reinstate his current status thereby avoiding default

or obtain an income-based repayment plan. As a direct and proximate cause of these derelictions

of its statutory duties and obligations, the Lenders and/or their Loan Servicers were unjustly

14

enriched. They were improperly paid by the guaranty agency and/or plaintiff for loans they had

not in engaged in lawful and timely collection efforts and/or unlawfully made untimely claims

for.

**Fifteenth Affirmative Defense**
**Violation of 20 U.S.C. §1080**
**Failure Of The Lenders And/Or Its Servicers To Timely File Claim(s)**
**Against The Department's Guarantee On A Federal GSL Loan. Failure To Submit All**
**Required Documentation Required For Claims Made To The Department.**

35.    Defendant adopts and re-alleges as if fully set forth herein the definitions and

chronology of events set forth in paragraph 14. The original promissory notes alleged to create

the claimed amounts due have not been filed with the court and the defendant does not have

copies of them. Assuming, *arguendo*, that the notes do exist, the USA is claiming that they were

issued by Dade Savings and Loan Association and the Student Loan Marketing Association. The

Student Loan Marketing Loan Association note was made as a result of the consolidation of other

earlier notes from an unknown lender(s) and in unknown amount(s). To the extent that any of

these notes and loans are shown to be federal student loans guaranteed by the Department, the

Lenders and/or its Service failed to timely file its default claim(s) with the Department. Under 34

C.F.R. 682.200 default on a GSL occurs when a borrower fails to make a payment when due,

provided this failure persists for 120 days. To obtain payment on a claim the lender must timely

file with the Department a default claim for that specific loan. 34 C.F.R. 682.511. The claim

must be made on a Department issued claim form and the lender must attach to its claim the

following documents:

A)    original promissory note;
B)    loan application;
C)    payment history;

15

D)    collection history;
E)    copy of final demand letter
F)    all correspondence to and from the borrower whether that correspondence involves the original lender, a subsequent holder, or a servicing agent;
G)    evidence of any skip-tracing requests or for pre-claims assistance made to the Department;

*See* 34 C.F.R. 682.511

36.    The above-identified Department-issued claim form and documents must be submitted to the Department within 90 days after a default on the loan or within 90 days following transmission of the final demand letter sent to the borrower. 34 C.F.R. 682.511(e)(1). In the instant case the Lenders and/or their Loan Servicers did not timely file their default claim(s) with the Department. Moreover, they did not utilize the procedures set forth in Appendix C to 34 C.F. R. Part 682. to cure their due diligence violations. Despite these due diligence failures the Lenders and/or their Loan Servicers were unlawfully paid by the Department for the defendant's loans.

37.    But for the Lenders' failure to exercise due diligence as defined by the specific disclosure and reporting duties imposed upon them by 20 U.S.C. §1080 and §1082, the defendant would not have been placed into delinquent or default status. He would have been able to reinstate his current status or obtain an income-based repayment plan.  The Department's subsequent actions in paying the Lender's claim(s) despite the Lender's failures to timely file their claims and provide all required documents to the Department was unlawful and improper. The plaintiff cannot now seek reimbursement of monies the Department unlawfully made to the Lenders.

**Sixteenth Affirmative Defense**
**Violations Of  20 U.S.C. §1080 and §1082 By The Department Of Education. Failure By The Department To Ensure Compliance With The Standards Imposed On Lenders And**

16

**Loan Servicers Pursuant To Its General Powers As Set Forth In 20 U.S.C. §1080(a)-(l).**

38.     As set forth in these affirmative defenses, the Department failed to exercise it general powers as provided in 20 U.S.C. §1080(a) by not properly reviewing or investigating the Lender's lack of due diligence. Any insurance beneficiary of a loan guaranteed by the Department must promptly notify the Department of its loss and submit proof that it exercised due diligence in the making and collection of the loan, 20 U.S.C. §1080(a) and (d).Upon notification of such a claim, the Department must conduct a due diligence investigation on the Lender. 20 U.S.C. §1080(a). The statute clearly requires the Department to make a due diligence investigation to ensure that its payments to the Lender's are justified.

39.     The Department failed to ensure or determine the Lender properly and completely notified the defendant of his rights and responsibilities under the loan(s) both at the time of making the loan and during the repayment period and Lender's collection efforts. The Department also failed to conduct any meaningful determination either through a review of the Lender's submitted claim(s) or through any audit of the Lender's financial transactions that the Lender had actually exercised due diligence in the making and collection of the defendant's loan(s). *See* 20 U.S.C. §1080(a) and (d) ; 20 U.S.C. §1082(f)(1)-(4) ; 20 U.S.C. §1082(h).

40.     Had the Department properly investigated what the Lender did and failed to do before submitting and receiving payment on it's alleged "loss" the Department would have concluded that the Lender had not engaged in due diligence and was therefor not eligible for payment on the defendant's loan(s). The plaintiff cannot now seek reimbursement of monies the Department unlawfully made to the Lenders.

**Seventeenth Affirmative Defense**

17

**Failure Of Conditions Precedent**

41.     As detailed earlier in these affirmative defenses, the plaintiff, as assignee of the

note(s) has failed to comply with all of the conditions precedent required before it can commence

a lawsuit against the defendant. Specifically, the plaintiff has failed to provide and file the

original Promissory Notes; the Notices of Default; Initial Disclosure Statements; Statements of

Borrower's Rights; Repayment Disclosure Statements; TILA Disclosure Form(if utllized) and

Final Demand Letters. Since the plaintiff has failed to do so it should not be allowed to proceed

or recover in this lawsuit.

**Eighteenth Affirmative Defense**
**Lack Of Standing**

42.     The plaintiff has failed to file or otherwise show that it possesses valid

Assignments from the Lender(s) and that such Assignments comply with 34 C.F.R. 682.598 and

508 and 34 C.F.R. 682.511 ( c ).  Since the plaintiff has failed to do so it should not be allowed to

recover in this lawsuit.

**Nineteenth Affirmative Defenses**
**Negligence, Unclean Hands, Lack of Good-Faith Dealing**

43.     As detailed in the preceding affirmative defenses, the actions of the Lenders,

Servicing Agents, HEMAR, HEAF, guarantors and guaranty agency and Department reveal a

pattern of actions and practices that should be considered negligent or in the alternative

evidences unclean hands and the absence of good faith dealing with the defendant. Their actions

resulted in violations of federal laws and regulations governing GSLs. The plaintiff as assignee

of the original notes stands in the shoes of the original lender and cannot cure or otherwise undo

these actions. Accordingly, the plaintiff should not be allowed to recover in this lawsuit.

### Twentieth Affirmative Defenses
### Laches and Unconscionability

**44..**     As detailed in the preceding answer and affirmative defenses, the plaintiff has

unreasonably and unjustifiably waited over 20 years before seeking recovery. The defendant

reasonably relied on the passage of time and does not have the documents or records necessary to

rebut the plaintiff's allegations of non-payment or to attack or discredit the plaintiff's stated

claim amounts. The defendant is therefore prejudiced by the plaintiff's dilatory action in

commencing this lawsuit beyond the time considered reasonable to recover monies claimed owed

on a note. It would be unconscionable to allow the plaintiff to recover in this lawsuit.

### Twenty First Affirmative Defense
### Improper Accounting and Improper Acceleration

**45.**     The Lenders, Loan Servicers, HEMAR, HEAF as well as the Department and

plaintiff have failed to properly credit all payments made by the defendant in violation of the

terms of the note(s) and 20 U.S.C. §1080. As a result of this improper accounting the plaintiff is

estopped or has waived its subrogation rights as assignee of the note(s) and therefore cannot

claim a delinquency or default has occurred. The plaintiff has failed to properly accelerate the

amount due on the note(s) by failing to provide the required notice of default and final demand

letter to the defendant. The plaintiff has failed to comply with all conditions precedent to bring

this action and therefore is estopped from accelerating according to the terms of the note.

### Twenty Second Affirmative Defense
### Failure to Join Indispensable Parties

As detailed in the preceding affirmative defenses, the actions of the Lenders, Loan

Servicers, HEMAR, HEAF, Guarantors and Guaranty Agency, as well as that of the Department

reveal a pattern of unlawful conduct and non-compliance with the 20 U.S.C. §1080 and the

federal regulations governing GSLs and the payment of claims made to the Department for losses

under such loans. To the extent that the afore-mentioned entities engaged in such prohibited

activities the plaintiff has failed to join them as indispensable parties necessary to fully adjudicate

the lawfulness and appropriateness of its current claims.

I CERTIFY that a copy of the foregoing was furnished via U.S. Mail delivery this

17th day of March, 2014 to: Steven M. Davis, Esquire, Becker & Poliakoff, P.A., 121 Alhambra

Plaza, 10th Floor, Coral Gables, FL 33134, Attorney for Plaintiff, United States of America.

Jerome Hennigan
7744 Country Run Parkway
Orlando, FL 32818
Phone (407) 312-2847
jhennigan@gmail.com
Defendant