# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**                                        **Case No:   6:13-cv-1609-Orl-31DAB**

**JEROME V. HENNIGAN,**

        **Defendant.**

---

## AMENDED REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for reconsideration without oral argument, but additional briefing[1], on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR SUMMARY JUDGMENT (Doc. No. 32)** |
| **FILED:** | **September 11, 2014** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

On October 17, 2013, the United States, on behalf of the Department of Education (the "Department"), filed a Complaint against Jerome Hennigan alleging that he had defaulted on several student loans. Several of the student loans were from Dade Savings and Loan Association and guaranteed by the State of Florida and then reinsured by the Department of Education. The Department also seeks to recover a defaulted student loan made to Defendant from the Student Loan

---

[1] The United States Department of Education filed an "Objection" to the Court's previous Report and Recommendation (Doc. 40)., supplying a legible copy of the Promissory Note signed by the Defendant for the loan from Sallie Mae. Doc. 42. The Court construed the "Objection" as seeking reconsideration of the previous Report and Recommendation, gave Defendant the opportunity to respond, and stated its intention to issue an Amended Report and Recommendation. See Doc. 49.

Marketing Association ("Sallie Mae").   All of the loans were made under loan guaranty programs authorized under Title IV-B of the Higher Education Act of 1965, as amended, 20 U.S.C. 1071 *et seq.* (34 C.F.R. Part 682). Doc. 1.

The Department asserts that as of August 27, 2009, Defendant owed $19,357.37 on the promissory notes originating with Dade Savings and Loan and $87,161.32 on the loan from Sallie Mae, with interest accruing daily under the terms of the promissory notes at issue. Doc. 1-2.   These amounts have risen such that as of September 8, 2014, Defendant allegedly owed $22,574.56 and $127,473.64, respectively, on the promissory notes at issue. Doc. 32 at 25-26.   In support of the Complaint, the Department filed copies of two Certificates of Indebtedness attesting that Defendant defaulted on his obligation to repay the first set of promissory notes on May 28, 1986 and on his obligation to repay the second promissory note on October 8, 1991. Doc. 1-2.   The Department asserts jurisdiction under 28 U.S.C. § 1345.

For the reasons set forth below, it is respectfully **RECOMMENDED** that the Department's Motion for Summary Judgment be **GRANTED.**

## I.  Procedural History

On February 7, 2014, Defendant Hennigan, proceeding *pro se* – although licensed as an attorney since 1989 – filed a Motion to Dismiss the Complaint, arguing about the specificity of the pleading and the supporting exhibits.   Doc. 8.   The Motion was summarily denied on February 25, 2014.   Doc. 11.   On March 17, 2014, Defendant filed an Answer denying the Court has subject matter jurisdiction because the claims in the Complaint were allegedly previously adjudicated in state court; Defendant additionally asserted 22 affirmative defenses.   Doc. 13.

On September 11, 2014, the Department moved for summary judgment on the student loan agreements, providing copies of the Applications and Promissory Notes signed by Defendant and a

Statement of Material Facts, supported by affidavit and other record citations.   Doc. 32 (with exhibits).   Defendant filed his response on October 10, 2014.   Doc. 32.   On December 17, 2014, the parties filed a motion to extend time until January 31, 2015 to conduct the mediation, because although formal mediation was scheduled for December 22, 2014, the parties were in "earnest settlement negotiations and both sincerely believe[d] that settlement [was] possible without mediation" and wanted to minimize additional financial expenses by avoiding the mediator's fee. Doc. 35.   However, on February 3, 2015, the parties filed a Motion to Be Excused from Mediation because "despite the parties' best efforts, the parties are literally on different planets[2] with no hope of reaching an amicable settlement."   Doc.   37 ¶2.   Finding the matter ripe for decision, the Court issued a Report and Recommendation on February 13, 2015 recommending the District Judge grant in part the Department's Motion for Summary Judgment as to the Dade Savings Promissory Notes and deny in part the Motion as to the Sallie Mae Promissory Note because the copy of the Note attached as an exhibit was cut off and did not include the promise to pay language as the Department alleged.   Doc. 40.

However, on March 2, 2015, the Department of Education filed an "Objection" to the Court's Report and Recommendation (Doc. 40), in which the Department belatedly supplied a legible and complete copy of the Promissory Note signed by the Defendant for the loan from Sallie Mae. Doc. 42.   Defendant Hennigan also filed his Objection to the Report and Recommendation addressing the Dade Savings Promissory Notes.   Doc. 48.

The District Judge subsequently referred the matter to the undersigned to determine whether reconsideration of the Report and Recommendation was appropriate (Doc. 43) and the Court found

---

[2] In the absence of evidence of a secret interplanetary mission, the Court reads this representation figuratively.

that it was appropriate as to the Sallie Mae Promissory Note. Doc. 49. Defendant Hennigan was ordered to file his response to the Department's Objection (Doc. 42) by the date certain of **March 17, 2015**. However, Defendant failed to file an additional response by March 17, 2015, instead, filing his Response three days *later*, on March 20, 2015, contending he was granted three extra days for mailing "[p]ursuant to Fed.R.Civ.P. Rule 6(d)." Doc. 52 at 1.[3]

Although the Court is not required to consider responses which are filed late, it will in this case. The Department filed a Response to Defendant's March 20 Objection on March 30, 2015, attaching the Declaration of Laura Bevan, authenticating the original Sallie Mae Promissory Note. Doc. 56 at 4.

Defendant's original Response (Doc. 34) to the Department's Motion argued that the Department had failed to prove he had agreed to a "promise to pay" within the Sallie Mae Promissory Note. Doc. 34. Defendant recognizes in his latest Response (Doc. 52) that "the Department of Education's Objection (Doc. 42) does not detail any specific legal objection or argument as to how the [Magistrate Judge] committed error in denying the Government's motion for summary judgment with regards [sic] to an alleged Sallie Mae note. Instead, the Government merely claims that it has now located the previously missing/lost/not located Sallie Mae note and asserts that it now possesses the original note itself." Doc. 52 at 1.

---

[3] Defendant's calculations are incorrect. When the Court sets a date certain in a Court order for a document to be *filed*, the respondent filing the document is not entitled to add three days for "*service*" of the document. Rule 6(d), which applies to service of papers by an attorney under Rule 5(b)(2), is simply inapplicable to orders of the Court which set filing deadlines, and are governed by Rule 5(d). *See, e.g., Puerto Rico Electric Power Authority v. Vitol, Inc.*, 298 F.R.D. 23, 26 (D.P.R. 2014) ("[T]he Court is cognizant of the exceptions of Rule 6(d), such as, its non-applicability to orders of the court, or to extend statutory and jurisdictional periods, amongst others.").

The bulk of Defendant's latest Response (Doc. 52) concerns the verbatim hearsay and business records arguments concerning the admissibility of the Certificate of Indebtedness No. 2 that he made in his original Response regarding Certificate of Indebtedness No. 1.   *Compare* Doc. 52 at 4-17 *with* Doc. 48 at 3-17.[4]

The Court issues this Amended Report and Recommendation with the primary change being in the substantive discussion of the Sallie Mae Promissory Note, now that the original Note has been submitted, and no modification to the discussion of the Dade Savings Promissory Notes[5].

## I. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.,* 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91

---

[4]  To the extent Defendant argues that the original of the Sallie Mae Promissory Note was not properly authenticated (Doc. 52 at 2-3), that issue has been resolved with the filing of the Declaration by Loan Analyst Laura Bevan.  *See* Doc. 56 at 4.

[5]  The discussion of the hearsay objections is now applied to *both* Certificates of Indebtedness (No. 1 and No. 2) in the Amended Report and Recommendation.   Defendant has had ample opportunity to respond and raise objections to these documents.   *See* Docs. 48, 52.

L.Ed.2d 265 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F.Supp.2d 1257, 1262 (D. Kan. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F.Supp.2d at 1263 (quoting *Anderson*, 477 U.S. at 251–52).

## II. Discussion

The Department argues that it is entitled to summary judgment on the promissory notes at issue because the material facts in this case are not in dispute, Defendant received the loans, has failed to repay them, and the amounts demanded are due and owing, thus, it has the right to recover the amounts due. Specifically, the Department has produced evidence that Defendant executed the Promissory Notes and obtained two student loans in the amount of $34,581.29 and $9,161.82, he defaulted on his payment obligation on May 28, 1986 and October 8, 1991; to dispute the amounts owed, he must produce evidence of payment, which he has failed to do. Doc. 32.

Defendant argues in Response (Doc. 34) essentially three bases for denying summary judgment. First, he challenges the authenticity and content of the Department's Certificates of Indebtedness[6] and the copies of the promissory notes supplied with them, arguing that they do not

---

[6] To the extent Defendant challenges the factual statements in the Department's Statement of Material Facts (Doc. 32 at 25), the Court has not relied on the Statement and need not address these arguments.

fall within the business records exception.   Second, he argues that the Department failed to produce the original promissory notes and/or valid copies of the promissory notes, such that they cannot be used to support the Department's claims against him.   Third, he argues that judgments obtained against him by an entity called HEMAR Insurance Corporation in 1993 were obtained in partial or full settlement of the same debts which are the basis of the Department's current claims against him, but he offers no documentation to support this contention.

### A.  *Elements of a prima facie case of student loan default*

The requirements necessary to establish a prima facie case of student loan default for summary judgment purposes have been consistently described by federal district courts in several circuits. See *Guillermety v. Secretary of Education of the United States*, 341 F.Supp.2d 682 (E.D.Mich. 2003); *United States v. Durbin*, 64 F.Supp.2d 635 (S.D. Tex.1999); *United States v. Wendl*, 2012 WL 2601381 (E.D.Mich. May 22, 2012).   The Department may establish a *prima facie* case of student loan default by proving three elements: (1) the defendant signed a promissory note for a student loan; (2) the government owns the promissory note signed by the defendant; and (3) the promissory note has not been repaid or discharged.  *United States v. Gordon*, 2010 WL 4570147, *4 (Oct. 15, 2010); *Guillermety,* 341 F.Supp.2d at 688, *Durbin,* 64 F.Supp.2d at 636; *Wendl*, 2012 WL 2601381 at *2.  *United States v. Elliott,* 2006 WL 3759857 (N.D. Tex. Dec. 19, 2006); *cf. United States v. Irby*, 517 F.2d 1042, 1043 (5th Cir. 1975) (stating the same elements in a suit to collect on a defaulted small business loan).

Defendant, Jerome V. Hennigan, obtained several student loans under loan guaranty programs authorized under Title IV-B of the Higher Education Act of 1965 for the cost of his education.   Doc. 32 at 8-28.   All of the loans at issue in the case were reinsured by the Department

of Education under loan guaranty programs authorized under Title IV-B of the Higher Education

Act of 1965, as amended, 20 U.S.C. 1071 et seq. (34 C.F.R. Part 682).  *See* Doc. 32 at 8-9.

The Court will discuss the two set of promissory notes separately.

**B.  *The Dade Savings Promissory Notes***

On October 30, 1980, Defendant signed a promissory note obligating him to repay Dade

Savings and Loan Association for a $2,195 loan:

> I, Jerome V. Hennigan[7], hereinafter called the "maker," promise to pay to Dade Savings and Loan Association, hereinafter called the "lender," located at 1395 Semoran Boulevard Casselberry FL, the sum of $2,195.00 to the extent it is advanced to me, plus simple interest at the rate of 7 percent per annum on the outstanding balance of such sum and authorized later charges, all reasonable attorney's fees, and other costs and charges necessary for the collection of any amount not paid when due. The lender will not collect or attempt to collect from the borrower any portion of the interest which is payable by the U.S. Government or by an escrow agent.

Doc. 32 at 13.   The loan was disbursed on October 24, 1980.   Doc. 32 at 8 (Certificate of

Indebtedness No. 1 of 2).

On August 8, 1981, Defendant signed a second promissory note to Dade Savings and Loan

Association containing identical language for a loan of $3,000; this loan was disbursed on August

10, 1981.  Doc. 32 at 15.   On October 4, 1982, Defendant signed a third promissory note to secure

a student loan, as part of the Florida Guaranteed Student Loan Program, also promising to repay

Dade Savings and Loan:

> I, Jerome V. Hennigan, the borrower, promise to pay to Dade Savings and Loan Association, the lender, or to a subsequent holder of this Promissory Note, all of the principal sum of $2,500.00 to the extent it is advanced to me, plus an amount equivalent to simple interest on this sum at the rate of 7 percent per year.   If I fail to pay any of these amounts when they are due, I will also pay all charges and other costs – including attorney's fees – that are permitted by State and Federal law and regulations and are necessary for the collection of these amounts.   If this loan is referred for collection to an agency that is subject to the Fair

---

[7] Defendant's social security number has been redacted from all of the loan documents filed in the docket in accordance with the Administrative Procedures for Electronic Filing in Civil and Criminal Cases of the Middle District at p. 8.   The Court omits the redacted text.

Debt Collection Practices Act, I will pay those collection costs which do not exceed 25 percent of the unpaid principal and accrued interest.

Doc. 32 at 16.   This loan was disbursed on November 4, 1982.   Doc. 32 at 8.

The last two promissory notes for student loans from Dade Savings and Loan were signed by Defendant on September 20, 1983, and contain identical language to the previous one, except they were for two separate loans of $1,250.00 each; they were both disbursed on December 27, 1983.   Doc. 32 at 18-21; Doc. 32 at 8.   The Court will refer to all five promissory notes made in conjunction with loans from Dade Savings and Loan Association (and summarized in the table below) collectively as the "Dade Savings Promissory Notes."

| Date Note Executed | Loan Amount | Date Disbursed | Interest rate |
|---|---|---|---|
| 10/30/80 | $2,195 | 10/24/80 | 7% |
| 8/11/81 | $3,000 | 08/10/81 | 7% |
| 10/04/82 | $2,500 | 11/04/82 | 7% |
| 9/20/83 | $2,500[8] | 12/27/83 | 7% |

Doc. 32 at 8.   Defendant subsequently defaulted on his payment obligations under the Dade Savings Promissory Notes on May 28, 1986.   Doc. 32 at 8.

The holder demanded payment according to the terms of the Promissory Notes (applying the appropriate credits to the outstanding principal owed on the loans) and filed a claim on the loan guarantee.   *Id.*   The Dade Savings Promissory Notes were guaranteed by the State of Florida[9] and reinsured by the federal Department of Education under loan guaranty programs authorized under Title IV-B of the Higher Education Act of 1965, as amended, 20 U.S.C. 1071 et seq. (34 C.F.R. Part 682).   The holder demanded payment according to the terms of the note, and then filed a claim on the loan guarantee.   Doc. 32 at 8.

---

[8] Two promissory notes were signed on the same date for two separate loans of $1,250, for a total of $2,500. Doc. 32 at 18-21.

[9] Specifically, the Florida Department of Education Office of Student Financial Assistance.

Due to Defendant's default on the Promissory Notes, the guaranty agencies paid the claim of $9,161.82 for the Dade Savings Promissory Note. *Id*. The guarantor was then reimbursed for that claim payment by the Department under its reinsurance agreement. *Id*. Pursuant to 34 C.F.R. § 682.410(b)(4), once the guarantor pays on a default claim, the entire amount paid becomes due to the guarantor as principal. The guarantor attempted to collect the debt from the borrower, however, because the guarantor was unable to collect the full amount due, it assigned the right and title to the loans to the Department. Doc. 32 at 8.

The Department has attached as an exhibit to the Motion for Summary Judgment a copy of the Dade Savings Promissory Notes executed by Defendant, as well as a Certificate of Indebtedness Number 1 ("COI No. 1"), signed under penalty of perjury by Rosie Estrada, Loan Analyst with the United States Department of Education, indicating that Defendant defaulted on the loans at issue. Doc. 32 at 8-9.

**C.** *Sallie Mae Promissory Note*

The Department moves for summary judgment on the Sallie Mae Promissory Note (the "Sallie Mae Promissory Note"), asserting that Defendant executed a promissory note to secure a loan from Sallie Mae (the "Sallie Mae Promissory Note") and he has failed to repay it. Doc. 32 at 9. The Department has filed a second Certificate of Indebtedness from Ms. Estrada in support of the Sallie Mae Promissory Note ("COI No. 2"). *Id*. Defendant raises the same evidentiary issues with Ms. Estrada's Certificate of Indebtedness No. 2 as he did as to her COI No. 1. Doc. 34 at 13 ("Ms. Estrada's COI#2 is inadmissible hearsay for the same reasons her COI#1 is inadmissible."); Doc. 52 at 3-17. (These objections, and the reasons for overruling them, are discussed in detail below.)

According to COI No. 2, on October 10, 1988, Defendant executed a promissory note to secure a Federal Family Education Loan Program Consolidation loan from Sallie Mae, which was disbursed for $31,397.00 on June 30, 1989. Doc. 32 at 9. Defendant defaulted on his payment obligations under the Sallie Mae Promissory Note on October 8, 1991. Doc. 32 at 9. The loan obligation was guaranteed by the Higher Education Assistance Foundation and reinsured by the federal Department of Education under loan guaranty programs authorized under Title IV-B of the Higher Education Act of 1965.  20 U.S.C. 1071 *et seq.* (34 C.F.R. Part 682).  *Id*.  The holder demanded payment according to the terms of the note, and then filed a claim on the loan guarantee. *Id*.  Due to Defendant's default on the Sallie Mae Promissory Note, the guaranty agency paid the claim of $34,581.29, and the Department reimbursed the guarantor for that claim payment under its reinsurance agreement and received assignment of their right and title to the loan to the Department. *Id.*

Based on the copy of the Sallie Mae Promissory Note originally filed by the Department (Doc. 32 at 23), Defendant argued that the document was not a "promissory note" at all because there was no "promise to pay" language in the copy of the Note as provided by the Department. Doc. 34 at 14. The Court initially agreed, finding that without the original of the Sallie Mae Promissory Note or a copy of the actual Promissory Note signed by Plaintiff, the Department could not establish an essential element of its case, *i.e.*, that Defendant signed a promissory note[10] for a student loan. Doc. 40 at 16. However, on February 24, 2015, as part of its Objection/Reconsideration request, the Department filed a corrected and complete copy of the Sallie Mae Promissory Note as signed by Defendant. Doc. 42 at 4-8 (Exh. 8).   The Court considers this corrected exhibit, as well

---

[10]  On February 10, 2015, the Department filed an Amended Motion for Summary Judgment (Doc. 39) attaching a copy of what was apparently a different Sallie Mae "Promissory Note" for a different borrower. Doc. 39 at 26.   This amendment was also insufficient.

as the Declaration of Laura Bevan, Loan Analyst authenticating the Note as the original (Doc. 56 at 4), along with the arguments made in the Department's original Summary Judgment Motion.

The Department argues it is entitled to Summary Judgment under the terms of the Sallie Mae "Application/Promissory Note," in which Defendant has promised to repay Sallie Mae. Defendant's signed Sallie Mae Promissory Note provides:

> I, the undersigned borrower, promise to pay to the Student Loan Marketing Association (Sallie Mae) at Student Loan Marketing Association, P.O. Box 5997, Lincoln, NE 68505-0997 (or at such other address as designated by Sallie Mae) such loan amount as is advanced on my behalf, to pay daily simple interest on the unpaid principal balance thereof at the rate described on the reverse side hereof, all in accordance with repayment schedule to be furnished to me, and to pay all late charges, reasonable attorney fees, and other costs permitted by law and incurred by Sallie Mae in the collection of any amount not paid when due. I understand that the amount of my loan will be based on the pay-off balances of loans selected for consolidation as provided by the creditors of such loans and may exceed my estimates of such pay off balances. My signature below certifies that I have read, understood, and agreed to the conditions and authorizations stated in the terms hereon and on the reverse side hereof and have received a copy of this application/promissory note.

Doc. 42 (dated October 10, 1988).  Defendant provided in an addendum to the Sallie Mae Promissory Note which indicated that he was *not* including his "HEMAR Service Corp. of America" loans as part of the Sallie Mae consolidation.   Doc. 42 at 8.

The Department has established its *prima facie* case by showing Defendant signed the Sallie Mae Promissory Note (Doc. 42), and, as stated in COI No. 2, the Department now owns the Sallie Mae Promissory Note signed by Defendant by virtue of its reinsurance agreement; and it has not been repaid.  *See* Doc. 32 at 9.

### D.   *Authenticity and Validity Objections*

In his Responses to the Motion for Summary Judgment and the original Report and Recommendation (Docs. 34, 48, 52), Defendant does not seriously dispute that he executed the Dade Savings Promissory Notes or the Sallie Mae Promissory, but concentrates his arguments on the authenticity and validity of the two sets of Promissory Notes, arguing they are unenforceable

because the Department has presented only copies, has failed to properly authenticate the copies, and has failed to meet its evidentiary burden of showing who guaranteed the Notes, and that the Department reinsured them, the demand(s) for payment from Defendant, and the amounts and dates of loan disbursements.   Defendant essentially challenges all of the representations[11] that were made by Ms. Estrada in the two Certificates of Indebtedness, based on her review and analysis of the Departments records.   Doc. 32 at 8-9.

The Department may establish the *prima facie* elements by producing the promissory note and certificate of indebtedness signed under penalty of perjury.   *See Guillermety,* 341 F.Supp.2d at 688; *United States v. Stanfield*, 2001 WL 484069 (E.D.Penn. Apr. 2, 2001).   The Department may also use sworn affidavits submitted by Department of Education loan analyst in support of its *prima facie* case.   *See, e.g,. Guillermety,* 341 F.Supp.2d at 688; *Stanfield,* 2001 WL 484069 at *7. The Department of Education may use computer printouts in support of its *prima facie* case, as long as it can lay the necessary foundation for the admission of these printouts under FRE 803(6). *Guillermety*, 341 F.Supp.2d at 688-690 (computer printouts generated by the Department established that the loans were assigned to the United States on the dates established and were admissible because the Department established the appropriate foundation for the admission of the documents under Rule 803(6) as a business record); *United States v. Salgado*, 250 F.3d 438, 452 (6th Cir. 2001) (holding a computer printout may be admissible under Rule 803(6) as a business

---

[11] Defendant's raises specific arguments that the Department has not independently shown: that the Dade Savings notes were guaranteed by the State of Florida and subsequently reinsured by DOE, that demand was made to the defendant for payment under the terms of the Dade Savings notes; that the unidentified holder of the Dade Savings note filed a claim on the loans' guarantees; that the guaranty agency paid the notes' holder claim; that the guaranty agency was reimbursed by DOE under its reinsurance agreement; that the guarantor attempted to collect from the defendant the full amounts due on the Dade Savings notes; that, on October 3, 2000, the Department received from the guarantor an assignment of the rights and title to the Dade Savings notes; and that the specific amounts of principal and interest are owed since it received assignment of the Dade Savings notes from the unknown and unidentified guarantor.   Doc. 34.   He also argues that the Department has not shown the Sallie Mae Promissory Note was subsequently assigned to the Department.   Doc. 52 at 3.

record if a proper foundation is established).   Pursuant to 28 U.S.C.A. § 1732, microfilmed copies[12] of originals may be substituted by a government agency who destroys the original in the regular course of business but preserves the copy that way.

The Sixth Circuit held in *United States v. Davis*, that the Department had established a *prima facie* case that it was entitled to collect on the promissory note where it had filed a certificate of indebtedness from the United States Department of Education in which a loan analyst certified under penalty of perjury that the defendant had defaulted on the loan, was indebted to the United States by virtue of a guaranteed loan made by a private lender and assigned to the United States, and stated the amounts owing based on Department records.   28 Fed. Appx. 502 (6th Cir. 2002) (citing *United States v. Irby*, 517 F.2d 1042, 1043 (5th Cir. 1975)).

Defendant challenges the statements made in the Certificates of Indebtedness as not specific as to the identity of the guaranty agency/guarantor, the holder of the note, or the assignments; he also argues that no *certified* copies of the Promissory Notes have been submitted. However, declarations by Department loan analysts based on the Department's records made under penalty of perjury may be submitted in lieu of affidavits in federal court, 28 U.S.C. § 1746, and have been routinely relied upon in granting summary judgment to the Department.   *See, e.g., Guillermety,* 341 F.Supp.2d at 688; *United States v. Makler*, 2000 WL 1137293 (E.D.Pa. Aug. 11, 2000).

As Judge Jenkins of this Court – faced with the nearly identical issues in a loan analyst's certificate of indebtedness and declaration – found, although it was insufficient to satisfy the "business records" exception to the hearsay rule because it failed to state that the analyst was

---

[12]   The Promissory Notes at issue were preserved on microfilm.   *See* Doc. 32 at 15-23.   To the extent Defendant argues the Department must present the original Promissory Notes (Doc. 34 at 8-9), this argument fails.

familiar with DOE's maintenance of student loan records or that the analyst was in custody and control of the student loan records or the records were kept in the course of DOE's regularly conducted student loan business, it nonetheless, could be relied upon in granting a motion for summary judgment because it "can be reduced to admissible evidence at trial" or "reduced to admissible form." *Gordon*, 2010 WL 4570147, *3(citing *Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999)).   As in the certificate of indebtedness of the loan analyst in *Gordon*, Ms. Estrada's ability to authenticate the certificates of indebtedness in this case is not in serious doubt, and they would be admissible once *properly* authenticated.   *Gordon*, 2010 WL 4570147 (citing *Lawrence*, 276 F.3d at 196; *United States v. Petroff–Kline*, 557 F.3d 285, 292 (6th Cir. 2009)). "Consequently, [the loan analyst's] declaration should be considered in resolving [the Department's] summary judgment motion."   *Gordon*, 2010 WL 4570147, *3 (citing *Davis v. Houston County, Ala. Bd. of Educ.*, No. 1:06–cv–953–MEF, 2008 WL 410619, at *3 (M.D.Ala. Feb.13, 2008) (considering unauthenticated medical record)).

Alternatively, other district courts have found that DOE loan analyst's certificate of indebtedness falls within the public records exception to hearsay, Federal Rule of Evidence 803(8). *See, e.g., United States v. Wright*, 850 F.Supp. 965, 967 (holding that a certificate of indebtedness falls within the public record exception to hearsay).   "Because the Certificate of Indebtedness is a public record of a public office, the presumption is that this document was accurately prepared, and Defendant has failed to point out any circumstance indicating a lack of trustworthiness."   *United States v. Ragan*, 2011 WL 5075544, *2 (C.D.Cal. Oct. 25, 2011) (citing *Wong Wing Foo v. McGrath*, 196 F.2d 120 (9th Cir. 1952) (holding that justification for the public records exception is the assumption that a public official will perform his duty properly)), *rev'd on other grounds*, 546 Fed. Appx. 657 (2013).

Moreover, because Defendant has not seriously denied that he was granted the loans or signed the Promissory Notes at issue – disputing only whether these debts were reduced to judgments previously – his authenticity objections to the copies of the promissory notes are moot. *See Lawrence*, 276 F.3d at 196 (finding the authenticity objections to be moot because defendant conceded that he applied for and was granted the loans and that he signed the promissory notes); *United States v. Gorski*, 585 Fed. Appx. 929, 931-32 (9th Cir. 2014) (holding the authenticated copies of defaulted student loan borrower's promissory notes were admissible pursuant to Fed.R.Evid. 1003 governing the admissibility of duplicates where borrower did not really deny that he signed the underlying promissory notes or that they had not been repaid, where he failed to offer evidence that he did not receive the underlying loans).   Accordingly, Defendant's evidentiary objections to the Certificates of Indebtedness (No. 1 and No. 2) and to the copies of the Promissory Notes are not well taken.   The Department has established its a *prima facie* case by showing Defendant signed the Promissory Notes at issue (Doc. 32 at 13-21; Doc. 42), and, as stated by Ms. Estrada's in the Certificates of Indebtedness, the Department now owns the Promissory Notes signed by Defendant by virtue of its reinsurance agreements with the respective entities, and the Promissory Notes have not been repaid.   *See* Doc. 32 at 8-9.

### E. *Defendant has not produced evidence he has satisfied the Notes*

Once the Department establishes a prima facie case of student loan default, the burden then shifts to the defendant to produce evidence which proves the nonexistence, payment, extinguishment or variance in payment of the obligation.   *See, e.g. Petroff–Kline*, 557 F.3d at 290; *Guillermety* at 688. It is not sufficient for a defendant to merely allege non-liability; rather, the defendant must produce specific and concrete evidence of the nonexistence, payment, or discharge of the debt. *Durbin*, 64 F.Supp.2d at 636; *Stanfield,* 2001 WL 484069 at 4-9. Cancelled checks, bank statements,

and tax records, are the types of documents found to be acceptable as evidence of payment.   *Durbin,* 64 F.Supp.2d at 636; *Stanfield,* 2001 WL 484069 at 8-9; *cf. United States v. Nevels,* 2000 WL 1137733, *2 (E.D.Mich. July 7, 2000) (unsworn handwritten letters or notes are not sufficient in opposing summary judgment on student loan default).

Applied here, the burden now has shifted to Defendant, who argues that the Promissory Notes should be fully or partially offset by two judgments which were entered against him in 1993 in state court for, he alleges, partial or full satisfaction of the student loan defaults on which the Department is now suing him.   Doc. 34-1. He has provided copies of (only) two writs of execution stemming from the final judgments entered against him in February 1993 in two lawsuits both styled *HEMAR Insurance Corporation of America v. Jerome Hennigan,* [13] for $9,389.84 and $14,541.45.   However, he has not provided any other supporting documents to establish the nature of the underlying claims in the suit, including that the *HEMAR* judgments arose out of student loans originating with Dade Savings and Loan Association or Sallie Mae.[14]

Defendant further argues that he has no copies of the final judgments, complaints or other pleadings in the *HEMAR Insurance* cases, and they are no longer available from the Orange County Clerk of Court because the court files were destroyed years ago, and he has no personal recollection of the specifics of the old state court lawsuits.   Doc. 34-1.   Defendant essentially argues a laches defense, contending that "it is fundamentally unfair and inequitable for the Government to wait nearly 30 years before initiating a collections lawsuit during which time records evidencing that the defendant has previously been sued on whole or in part for the very same loans," relying on *United*

---

[13]   Orange County Court Case Nos.: 1991-CC-8458 and Case No. CI 1991-9166.

[14]   The Department argues that the debts could not be related because it would be "mathematically impossible."   In the Sallie Mae Application/Promissory Note, Defendant specifically excepted the HEMAR loans from the Sallie Mae consolidation.   Doc. 42 at 8. The Court need not consider the "relatedness" of the HEMAR judgments because Defendant has failed to meet his burden of production.

*States v. Rhodes*, 788 F.Supp. 339 (E.D. Mich. 1992).

However, laches and the statute of limitations defenses are not recognized as valid defenses in student loan default cases. *Durbin,* 64 F.Supp.2d at 637; *United States v. Robbins*, 819 F.Supp. 672 (E.D.Mich.1993).   The 1991 amendments to the Higher Education Act ("HEA"), 20 U.S.C. § 1091a[15], eliminated the statute of limitations for the collection of student loans. *See, e.g.,United States v. Newcombe*, 2009 WL 1759587 (M.D.Fla. 2009) (citing *United States v. Glockson*, 998 F.2d 896, 897 (11th Cir.1993)); *United States v. Brown*, 7 Fed. Appx. 353, 354 (6th Cir.2001) (holding retroactive application of 20 U.S.C. § 1091a does not constitute an ex-post facto law); *United States v. Litts*, 2000 WL 435484, at *3 (D.Conn. Feb. 23, 2000) ("The overwhelming majority of courts have rejected the claim [of laches] as a defense to federally financed student loans.).   Moreover, the *Rhodes* decision has been roundly criticized, and appears to conflict directly with 20 U.S.C. §1091a. *See, e.g., United States v. Iwanski*, 805 F.Supp.2d 1355, 1358 (S.D.Fla. 2011) ("[S]everal courts have noted that *Rhodes* did not address in any way whatsoever the appropriateness of such a defense.").

Defendant's final argument against the Department's Summary Judgment Motion is that the Department violated various disclosure sections of the Higher Education Act, 20 U.S.C. §1080, 20 U.S.C. §1082, and 34 C.F.R. 682.205 [16].   The Department argues that even if Defendant's allegations about the lack of appropriate disclosures were true, they would not support defenses to

---

[15]   "[I]t is the purpose of this subsection to ensure that obligations to repay loans and grant overpayments are enforced without regard to any Federal or State statutory, regulatory, or administrative limitation on the period within which the debts may be enforced." 20 U.S.C. § 1091a(a) para. 1.

[16]   Defendant's argument regarding the rescission provisions of the Truth in Lending Act would not apply to his student loans since they only apply to a "consumer credit transaction" in which a "security interest is acquired" in "a property used as the principal dwelling of the person to whom credit is extended."   15 U.S.C. §1635(a).

repayment of his student loans because these defenses are unsupported by any facts and do not support debt forgiveness in case of a violation.

Federal courts have declined to find that a private right of action exists under the Higher Education Act for violation of the disclosure provisions.   *See, e.g., Graham v. Security Sav. And Loan*, 125 F.R.D. 687 (N.D. Ind. 1989) ("After a review of the statute and regulations, it does not appear that Congress intended to provide a remedy for students in default of their obligation as a result of any alleged non-compliance with the Act by the institution or lender.").   The statute provides that failure to disclose under § 1083 does not "relieve a borrower of the obligation to repay a loan in accordance with its terms, [or] provide a basis for a claim for civil damages." 20 U.S.C. § 1083(f).   *Id.*

The Department has established a *prima facie* case that Defendant defaulted on the Dade Savings Promissory Notes and the Sallie Mae Promissory Note, and Defendant has failed to rebut the Department's showing by producing relevant evidence that demonstrates the payment or discharge of the loans.   Accordingly, it is respectfully **RECOMMENDED** that the Department's Motion for Summary Judgment be **GRANTED.**

### E. Attorney's Fees

The Department argues that it is entitled to $2,040.00 in attorney's fees under the Higher Education Act of 1965, 20 U.S.C. § 1071 et seq, (the "Act") and pursuant to the "Promise to Pay" sections of some of the Promissory Notes. The Act provides that in addition to the terms of any promissory note, "a borrower who has defaulted on a [student] loan shall be required to pay . . . reasonable collection costs." 20 U.S.C. §1091a(b)(l).   The Code of Federal Regulations provides that the Government "may charge a debtor for the costs associated with the collection of a particular

debt [i.e., a defaulted student loan]. These costs include . . . [c]ourt costs and attorney fees." 34 C.F.R. § 30.60(a)(8).

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam); see also *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court may use the lodestar method to calculate an attorneys' fee award in a student loan default case. *See, e.g., United States v. Davis*, 2007 WL 2287889 (E.D.N.Y. Aug. 8, 2007) (noting that "there are sound reasons for proceeding down the well-worn path that is the lodestar method" as opposed to the percentage of recovery method). Attorney's fees must be calculated at the "prevailing market rates" in the relevant "community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates, *see id*. at 897, which necessarily includes an affidavit of the attorney performing the work and information on rates actually billed and paid in similar lawsuits. *Id.* at 895 n.11.

The Department's counsel has presented an itemized list of the services provide by his firm, and the time spent by him appears reasonable for the tasks completed. Counsel, Steven M. Davis, who is experienced in collections matters[17] spent 10.2 hours on the case at the reasonable rate of $200 per hour. Doc. 32 at 10-12. "Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness." *Farrar v. Hobby*, 506 U.S. 103, 115 (1992). It is respectfully **RECOMMENDED** that the Department be awarded attorney's fees of **$2,040**.

**F. Costs**

---

[17] http://www.becker-poliakoff.com/sdavis (visited on December 11, 2014).

The Department also seeks to have costs reimbursed in the amount of $2,125.00 consisting of a Fee for Service and Travel, per 28 U.S.C § 1921.   Doc. 32, Ex. C.   Costs are to be taxed by the Clerk upon presentation of a bill of costs and reviewed upon motion by any party.   Fed.R.Civ.P. 54(d)(1).   To the extent the Department seeks to recover its costs it must file a bill of costs.

# CONCLUSION

It is respectfully **RECOMMENDED** that the Department's Motion for Summary Judgment be **GRANTED**.   The Department is **ORDERED** to file a Proposed Judgment within 7 days setting forth the up-to-date amounts owed for principal and interest, and including the attorney's fees recommended herein.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 6, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy